Good morning, Your Honors, and may it please the Court, I'm Eric Konopka for Alice Brown. I'd like to reserve three minutes for rebuttal. If you could keep your voice up, I'd appreciate it. I think probably the problem is my computer's sound doesn't go up very high. Okay, I'll try to project well. Okay. Thank you. I'd like to reserve three minutes for rebuttal. Okay, and you can see the clock? I can, yes. Yes, Your Honor. Your Honors, the briefing covers a lot of ground in this case, but today I'd like to focus on three main subjects. First, the Magistrate Judge committed serious procedural errors in this case, most significantly ruling on a motion to withdraw consent over which he had no authority whatsoever. That error alone requires a remand and could obviate the need for this Court to address and resolve the substantive errors in the District Court's decision. Second, the District Court shouldn't have granted summary judgment on the impoundment and excessive force claims because a jury could decide that the impoundment and the unworn use of force were unnecessary and unlawful. And third, I'd like to touch on why the Eighth Amendment claim should be remanded in light of this Court's intervening decision in Martin v. City of Boise. I'd like to turn first to the motion to withdraw consent to Magistrate Judge jurisdiction. After this Court's 2019 decision in Branch v. Umphenor, there's no question that that motion had to be decided by an Article III District Judge and not by Magistrate Judge Illman. Defendants' principal counterarguments all conflict with Branch in one way or another. Their main argument seems to be that we've somehow waived the issue, and Branch sort of disposes of that argument from the get-go. It essentially recognizes that this error is jurisdictional. It repeatedly uses the word jurisdictional. It says that actions that a Magistrate Judge takes in excess of his statutory authority are a nullity. And in fact, a separate part of the opinion sort of underscores the point. Mr. Branch, a series of Magistrate Judges had dismissed portions or claims from Mr. Branch's complaint at a time that he had consented to Magistrate Judge jurisdiction, but the defendants hadn't. And this Court, in that case, reversed the dismissal of those claims because the Magistrate Judge didn't have universal consent, and so therefore couldn't dismiss the claims without review by a District Judge. And what's notable about that is that Mr. Branch didn't raise that jurisdictional argument at all, even in his briefing on appeal. And that just underscores the fact that this is an argument that is fundamental, it is jurisdictional, and it can be raised for the first time on appeal. Assuming for the moment that you're right, and it does seem to me that the Magistrate Judge did make a mistake, what's the consequence? Do we set it aside entirely? Do we send it back to allow a District Judge to have a look at it and decide whether or not the consent is properly withdrawn? I mean, what do we do here? I think, Your Honor, we would love the Court to vacate the judgment and set the whole thing aside. I think the remedy that Branch says is appropriate in these circumstances is to remand for an Article III District Judge to take a look at it in the first instance and to give the sort of hearing on it that was denied the first time around. And if the District Judge, in seeing it, says the consent cannot be withdrawn, does that mean we have to get to the merits of the case? I think that's right, Your Honor. If the District Judge says that consent can't be withdrawn, then it would either come back up through the normal appeal process, or if this Court chose to do so, it could probably do a limited remand and retain jurisdiction over the substantive issues in the case as well. I think the defendant's other main counterargument seems to be that there is no need to remand because a District Judge will inevitably deny the motion. Again, as we've been discussing, I think that Branch disposes of that argument. It makes clear that that is the right remedy, regardless of what the Court might think a District Judge might do on remand. Okay. If Your Honors have no further questions on that subject, I'd like to turn next to the substantive issues and specifically start with… Before you do that, would you address the Magistrate's handling of the motion to disqualify? I think you're making a separate argument that that, too, was error for not providing reasoning. I guess my question there is more, what's your position on if we were to agree with your argument on that? Sure. I guess I'd make a couple of points. One, I think our point on the recusal, I think that that would also be potentially fair game for the District Judge ruling on the motion to withdraw as well. That might be fair game for a District Judge to rule on. Our position with respect to that is, Ms. Brown did file a motion to disqualify the judge. Our position is that it was under both 144 and 455. The Magistrate Judge didn't provide any reasoning, didn't say whether he thought it was untimely, didn't say whether he thought it was meritless, didn't say whether he considered any of the substantive considerations for recusal. I think all of those things together certainly warrant sending it back to the District Court, certainly at least for further consideration. If the court thinks that there's a basis for recusal as well, then that would require vacating everything that happened after the motion to disqualify. On that issue, do you think that we could deal with the merits of it? If we concluded that that was a clear loser, to just go ahead and decide that? I think this court can potentially do that. I think the reason why that would be a mistake in this particular case is, as we've discussed in our briefing on appeal, there were certainly grounds that seemed quite applicable to the set of circumstances that the Magistrate Judge either did consider and didn't say anything about, or didn't consider and should have, and that we think that he should be given that opportunity, certainly to at least make some kind of finding or some kind of record about whether he fell under the government employment portion of 455B3. If you have no further questions on the procedural issues, I'd like to turn to the impoundment claim. I think in the circumstances of this case, the impoundment of Ms. Brown's van was per se unreasonable under the Fourth Amendment, unless the federal defendants show that the community caretaking exception applies. And that's what we're saying, that they haven't done. Ranger Leachman stated both on video and in his declaration that he impounded Ms. Brown's van pursuant to a blanket policy of the National Park Service to basically impound every vehicle in which the driver is arrested, and also under California Vehicle Code 22651H, which sort of reflects the same authority. And this court's cases that we cited in our briefing, including Miranda v. Cornelius, United States v. Cervantes, and United States v. Caceres, make clear, both collectively and individually, that a blanket policy sort of isn't on its own a justification for impounding pursuant to the community caretaking exception. Instead, there has to be sort of circumstances, the purpose of the impoundment has to serve a valid caretaking purpose, and that has to be supported by evidence. And that's what was missing here. At the time that Ranger Leachman placed Ms. Brown in custody, had her under arrest, he sort of jumped immediately to impounding her vehicle. That's around minute 31 of the main video, the video three, said that he was impounding the van because she was under arrest and wouldn't be there, never asked her whether someone else could pick it up, never considered whether it could just stay where it was during the short amount of time that she ended up being in custody. And the federal defendants don't really seem to raise any reason why it couldn't have. It was parked legally in, by the time she was arrested, it was daytime. She was parked legally in a parking lot of a national and state recreation area that's used by other visitors for hours at a time. And there's no evidence in the record that her van would have been somehow different, or dissimilarly, differently situated from the other vehicles that park there, such that it would have been an unusual risk for theft or vandalism that would have warranted a community caretaking impoundment. Instead... Why wouldn't qualified immunity apply in that context? Even if we agree that this... Go ahead. Sorry, I think the reason why qualified immunity wouldn't apply is because it's clearly established that a blanket policy in itself isn't enough to impound a vehicle. I think that's... United States v. Cervantes was a 2012 case, that was over two years before the incident at issue. United States v. Casades was a 2008 case. Miranda v. City of Cornelius was a 2005 case. And all of those cases essentially hold that impounding pursuant to a blanket policy, and even pursuant to 22651H specifically, isn't enough. That, in fact, there is a specific justification required, and that has to be supported by evidence. And that's what we're saying is missing here. So what if the impoundment had taken place at 5 in the morning? Would that have been permissible? Obviously, you're not supposed to camp overnight in the parking lot. If it happened at 5 in the morning, would that have been all right? Your Honor, that's a good question. I think it would obviously be a very different case. I think the other thing that I would say... It does sound different, right? That's true. I mean, the reality is this was daytime. Shortly before Ms. Brown was placed under custody, someone else had, in fact, pulled up and began using the parking lot. I think there might be a different justification, though, in that if it's parked illegally, then there might be some more general source of law for the National Park Service to tow a vehicle that wasn't, in fact, parked there illegally. I think at the time that she was in the parking lot, at the time that she was arrested, it was already daytime, and there's no evidence in the record that her parking there was illegal or somehow improper. And yet the officer, the ranger-leechman, sort of automatically went to impoundment in our position for no reason whatsoever. Okay. I'd like to turn next to the excessive force claim. Our position with respect to that claim is, again, that a jury could decide that ranger-leechman's unwarned use of force was completely unnecessary. I think a recent district court decision put the rule well, based on this court's case law and case law from other circuits, that it's been clearly established for quite some time that the use of force for no force is necessary violates the Fourth Amendment. And that's the right that we're saying is violated here. I think the defendants really want to focus on two things. The first one, I'd say, is they want to focus on the two or three seconds that immediately preceded ranger-leechman's touching or grabbing Ms. Brown. And I think what this court's case law requires is that, instead, you have to look at the totality of the circumstances and everything that had happened in the 20 or 25 minutes up to that point. And what we know from that is that Ms. Brown was—ranger-leechman began his investigation because of unlawful camping, which is an exceedingly minor regulatory violation. The most serious crime that she was suspected of was PC-148, which this court's case law also says is minor and nonviolent. Ms. Brown gave her name. She gave her reason for being there. Ranger-leechman sort of regularly encountered campers in the same location. Ms. Brown never threatened ranger-leechman. She never brandished a weapon. She denied she had any. She was in the van for 20 minutes without any incident. She didn't grab a weapon. She told him again that she didn't have one. And once she opened the door, she said she wasn't getting inside, and he pulled her to the ground without any warning, without telling her that she was under arrest and without telling her that she wasn't free to leave. And under those circumstances, we think that there was no need for force. I see that I have about three minutes left. I'd like to reserve the rest of my time. Okay, let's hear it from the other side. You need to push a button. You're muted. May it please the court, Ben Wolinsky for the federal appellees. I will speak for 10 minutes, and counsel for the county appellees will speak for five. Neither the Supreme Court nor this court has ever recognized an excessive force claim based on an elbow hold used in response to a suspect who refused police orders to stop reaching into a car. Neither has the Supreme Court or this court ever recognized an impoundment claim where the vehicle was parked in a spot that was closed for the season, and both the impounding officer and the suspect herself said there was a risk of vandalism. Nor has either court ever recognized a claim under these circumstances for a routine pat-down. As a result, every Fourth Amendment claim in this case fails as a matter of law, and at minimum, because the appellant has not carried the burden to identify a case showing that these rights were clearly established in 2014, they are barred by qualified immunity. The reply brief introduces several new citations, but each is significantly off point, and I'd like to take them in turn. First, as to excessive force... Before you do that, would you address the procedural points? I mean, I have a question in my mind of whether we can even reach the arguments that you're making at the moment. Absolutely, Your Honor. As a threshold matter, we do not reach the branch analysis because Ms. Brown plainly did not make a motion under Rule 73. The transcript shows that it was a question about what she called filing the consent or declination form. That's plain from the text. What's more, we know for a fact that she did not make an oral motion, and that Judge Illman would have no reason to believe it was an oral motion because she actually did make an oral motion minutes before that, and it looked completely different. Didn't Magistrate Judge Illman say you're going to like me better, indicating very clearly that he knew that she was saying she still wanted to withdraw the consent? I didn't make that statement, Your Honor, but this is a key distinction. Ms. Brown was asking whether she could file the consent or declination form again, and Judge Illman's advice to her, or I should say response, no, was legally correct then and legally correct now. The key point is that Judge Illman would have no reason to believe that this was an oral motion because it looked nothing like what Ms. Brown made as an oral motion on ER 235. How can we—I'm confused by that argument because the court itself at ER 51 described Ms. Brown as making an oral motion to withdraw consent. That's the court's description of what happened. That was—pardon me, Your Honor. That was a clerk's entry, and if we look at the transcript itself, what Judge Illman said, we see two important points. First, on ER 235, when Ms. Brown said, I'd like to make an oral motion, this is the basis for the motion, this is the standard, Judge Illman then said, I grant your oral motion. This is minutes before the interaction. In stark contrast, on ER 240, Ms. Brown is asking about a form, and Judge Illman refers to it as a request. But these distinctions really matter, and the reason is this. Under branch, the remedy is to remand the motion for consideration by an Article III judge. The problem is that here there's nothing to refer other than transcript fragments. There's no standard. It's impossible to identify what portion of this was the actual motion, and to the extent that the suggestion is, well, remand with an explanation or remand for briefing, that's not only prejudicial to the other litigants, it just establishes that in the first place this was never a motion. Now, you say all she said was it was a request. With a pro se litigant, is that something you can really hang your hat on? Yes, Your Honor. In fact, it's the exact opposite. In Jacobson v. Spiller, this court held that a non-prisoner pro se litigant cannot take advice from a judge on whether to file an opposition motion because it goes to the avoiding bias of that judge. Are you saying that Judge Ullman did not understand that she was trying to revoke the consent? I'm saying, Your Honor, without knowing exactly what the judge thought, that she asked about the forms. The answer he gave was legally correct. Under Jacobson v. Spiller, he was barred from giving her further advice. Does your answer mean then even if Judge Ullman understood that she was asking to withdraw the consent, it doesn't matter because she didn't use the right words? It's not a question of the words, Your Honor. Judge Ullman was bound to answer the question. No, no, please answer my question. My question is, is it your position that even if Judge Ullman understood that she wanted to withdraw the consent, it doesn't matter because of the words she used? It doesn't matter because he was obligated to answer the question asked. So you're saying even if he understood exactly what she wanted, it doesn't matter? That, I think, was the answer you just gave me. Yes, Your Honor, because it's impossible to understand subjectively. He was bound by Jacobson v. Spiller to answer the question as asked or gets into the realm of providing legal advice. Now, I'd like to touch just briefly on the substantive Fourth Amendment claims. As noted in the brief, Sharp v. County of Orange, incorporating the Supreme Court's holding in White v. Pauley, places the burden on the plaintiff to identify a case showing that the conducted issue violated the Fourth Amendment and that this was clearly established at the time. None of that exists here. As to the impoundment claim, on ER 190, paragraph 7, Ranger Leachman testifies that the Hiuchi lot was, in fact, closed for the season, not for the evening. More significantly, overcoming both Cervantes and Miranda, both Ranger Toller and Ms. Brown said that there was a risk of vandalism. And Ranger Toller's statement that he impounded not simply because of policy, but in addition because of the risk of vandalism, can be found at ER 205, paragraph 4. This was an additional consideration. It was not simply an impoundment due to policy, although that would have allowed it. As to the excessive force claim, the reply brief cites two new cases, Young v. Los Angeles and Bryan v. McPherson. Both of those cases applied the Graham v. Conner analysis, but they applied to entirely different categories of intrusion and entirely different categories of governmental interests. Specifically, those cases dealt with intermediate significant intrusions, pepper spray and baton in the case of Young, and taser with a dart in terms of Bryan. That's the opposite consideration here. Here, Ranger Leachman used what this court has already determined in Donovan and Forrester to be the most minimal level of intrusion, wrist hold. And that matters. It matters because the alternative was to allow Ms. Brown to reach the driver's compartment of her car, where she could either access a weapon or access something that could be confused as a weapon. And if that happened, the situation has escalated dramatically. And not only Ranger Leachman's life is in jeopardy, but Ms. Brown's life is in jeopardy as well. So this court's case law is entirely consistent with what we would want a police officer to do in that situation to both avoid more significant force and to avoid a considerable escalation. Now, I'd like to touch briefly on the Eighth Amendment question. There was a note in the reply brief that perhaps— I know you wanted 10. 10, Your Honor. You started at 10? Yes, sir. Okay. On the Eighth Amendment point, the reply brief raises the possibility that perhaps Jones, this court's earlier decision on the issue, would suffice for the clearly established qualified immunity. That's simply not so. In Martin itself, on page 1036, this court said that Jones is not binding on us. It is axiomatic that if Jones was not binding on this court in 2018, it could not have been binding on Ranger Leachman in 2014. Lastly, as to the pat-down, it is absolutely clear that, and nor has any case to overcome qualified immunity been raised, that an arrestee has no right to choose the gender of the officer applying the pat-down, nor would that be practical. As a result, because the appellant briefs do not cite any case that can overcome qualified immunity, at minimum, the federal appellees are entitled to that qualified immunity on every one of the Fourth Amendment claims and certainly on the Eighth Amendment claim. To finalize on the issue of branch, as we mentioned, this was not a motion. I'd like to clarify one point, though, that although branch itself spoke to jurisdiction, it spoke to the issue of magistrate jurisdiction. It never spoke to the idea of subject matter jurisdiction. Although the reply brief then relies on two cases, one dealing with a bankruptcy court and one from 28 years ago in the Fifth Circuit, what is clear is this court has never said that magistrate jurisdiction falls under subject matter jurisdiction, and there is no reason to believe that we have to reach that binding conclusion. As a result, because the appellant has not identified a case for any of the Fourth or Eighth Amendment claims and that this was not a motion, we ask the court to affirm. Okay, thank you. Mr. Klobuchar. Yes, good morning, Your Honor. I apologize, I was trying to get the mute button off. If it pleases the court, I do want to address the branch issue first. I don't want to throw you off. Please identify yourself for the record before you start. I apologize, yes. Nicholas Kleppel on behalf of the county descendants. Okay. Okay. I do want to address the branch issue to start. I'm not going to reiterate anything that was already stated, but I do want to make a point about the nature of the things and comments made by Ms. Brown during the proceedings. First, as distinct from branch, this was an oral statement to a magistrate judge at the tail end of a case management conference. It wasn't a written motion as it was in branch directed to the district court judge. And when the comments were made, they referenced something that arose from the prior criminal case and her experiences with the new judge in the criminal case. My point being here is that there was nothing about the argument that she presented, if we're calling it that, or the comments or inquiries that she made otherwise, to indicate extraordinary circumstances that would have alerted the magistrate judge or would have otherwise required reference to rule 73 or 636 for the purposes of considering forwarding this to the district court judge to make a determination on. So the point is that I think to kind of bolster the position taken by the federal defendants, what was done here at the tail end of the case management conference really did not equate something that would have been considered by the judge at that time as a motion to withdraw consent. And then from a practical standpoint, I think it would be a concerning situation for magistrate judges who have been given consent by both parties to hear the case entirely, to have to essentially unplug, full stop, whatever proceeding they're doing whenever some comments are made hinting on withdrawal. And I think that's the concern I would have here. For example, if there's a hearing on a motion or a pretrial conference for a trial starting within the next week or two following the pretrial conference and some comments were made about withdrawing consent, the case would have to stop, delay, probably delay the trial and go to an article three judge. Counsel, excuse me. Maybe I don't understand the procedural posture here, but I thought that there was a new magistrate judge who came in and that precipitated this. It was a new magistrate judge, correct. Which is a different situation from the situation where we're going to start our pretrial conference now and there's some muttering about not liking the magistrate judge. It is a kind of a situation that might precipitate such a motion. Well, I think when you're looking at the specific circumstances here, asking about whether or not consent could be withdrawn is something that would be not unexpected, especially for a pro se litigant. The issue is whether or not those questions constitute a motion warranting referral to an article three judge and potentially delaying the process of trial in my example and so forth. My point here is not to split hairs about the procedural aspects of making a motion, but to state that something more I believe is necessary to warrant that. I can't tell you how you have to look at the context and how it could reasonably be understood. I would think I do agree with that. But again, if you're looking at in this case, as the example of context, nothing was raised to indicate extraordinary circumstances to me. I can't say how many times it's been discussed with either opposing counsel raised in a conference about withdrawing consent and so forth. The inquiry about that doesn't constitute or equate a motion that I think would under branch would require referral to an article three judge. That's ultimately my point. And I think it was perceived as a discussion. It was categorized by the clerk post hearing as a motion for, I think, the lack of a better way to qualify it. But in terms of what was presented to the judge at the time, I think it would be difficult for them to discern that it required referral under 73 to an article three judge. Going briefly to the substantive points, very briefly. The issue here is about a warning. Our officers had no ability to perceive any type of warning. There's no evidence in the record that they would have had an opportunity to do that. And therefore, they wouldn't have had an opportunity to intervene. Given the lack of time that I have. And my understanding is your officers show up on the scene as part of the backup, right? They do, and they show up after she's already on the ground. That's the end. And that's the key point of plaintiff's assertion that there was successive force. Right. Okay. Thank you. Thank you very much. You save some time. I have. Thank you, Your Honor. This idea that Ms. Brown didn't make a motion is very thin. I mean, she stated on the record that she would like to withdraw consent to magistrate judge jurisdiction, and she'd like to have that taken care of today. At a minimum, it shows that Judge Illman's response to that showed that any written motion would have been futile. And this court's case law, including Myers versus United States 673 Federal Appendix at 751, as well as Glick versus Edwards 803 F3 at 508, show that she wasn't required to make a futile motion to withdraw when she clearly stated on the record that she wanted to withdraw. And she stated her specific grounds for doing that. This idea also that that emotion would have been futile, I think, is again, as we discussed previously, branch disposes of that. I think in the course of the opinion, the court actually made clear that Mr. Branch's own grounds, I think he wanted to withdraw because he was unhappy with sort of the series of rulings that the magistrate judges had given him. And the court sort of said in the course of the opinion that that isn't on its own grounds for withdrawing magistrate jurisdiction. That isn't good cause or extraordinary circumstances. And still remanded the case to the district judge for consideration of the motion to withdraw. We do, by the way, think that there are or could be circumstances. Ms. Brown, the reason that she stated on the record for wanting to withdraw is that when she signed up and when she gave consent in the first instance, she did so on the on the understanding that Judge Bonas would be the judge. There are there is some case law out there. I know certainly out of circuit case law, recognizing that permission can be given in a limited fashion to a specific judge. It would certainly be open for a district judge to consider that ground as a possible motion as a possible reason for withdrawing consent. And again, we've raised other other potential bases for recusal and other things that a district judge could also consider on remand. I think the the other point I wanted to address to Mr. Walensky's point about accessing a weapon in the front seat. I understand that that was that's what Ranger Leachman stated his reason was for pulling Ms. Brown violently to the ground. This court's case law says that sort of an officer's statements of fear on their own aren't enough to justify the use of non-trivial force. There is certainly case law out there saying that the armbar takedown that Ranger Leachman used is not is and often can and often does result in significant injury to the suspect. It wasn't a trivial amount of force to use. And the reason for it is sort of belied by everything that happened before that. Ms. Brown had been in her van for 20, 25 minutes while Ranger Leachman was present. If she had intended to access a weapon, she could have gotten it while she was in the van. And instead, she walked in front of his cruiser directly in his line of sight instead of instead of sneaking around the back to access the front seat. And she denied that she was even getting in there. Thank you, Your Honors. OK, thank you, everyone, for their argument. Before we submit this case, I would like to thank you, Mr. Knapp. On behalf of the court, I understand you're doing this as a pro bono attorney. We're very grateful for you for doing this and we appreciate the quality of your briefing and your argument. This is not a comment on the merits. And I will also say to the other attorneys, you've also done a very nice job, but you're getting paid. So I won't thank you in quite the same way. The case of Brown versus County of Del Norte at all submitted for decision. Thank you very much. Thank you, Your Honors.
judges: Schroeder, W. Fletcher, Hunsaker